Calltrol Corporation, Plaintiff,

against
Dialconnection, LLC also known as VESPER TECHNOLOGIES, L.L.C., Defendant.


65994/2015

APPEARANCES:
LAW OFFICE OF AMOS WEINBERG
By: Amos Weinberg, Esq.
Attorneys for Plaintiff
49 Somerset Drive South
Great Neck, New York 11020
FLASTER/GREENBERG P.C.
By: John W. Fried, Esq.
Attorneys for Defendant
427 Bedford Road, Suite 390
Pleasantville, New York 10570


Alan D. Scheinkman, J.

Defendant DialConnection, LLC, also known as Vesper Technologies, L.L.C. ("Defendant" or "DialConnection"), moves pursuant to CPLR 3211(a)(5) for an order dismissing the Verified Complaint of Plaintiff Calltrol Corporation ("Plaintiff" or "Calltrol") on the basis of [*2]the statute of limitations. Plaintiff opposes the motion.
THE ALLEGATIONS OF THE COMPLAINT
This action for breach of contract was initiated by Plaintiff's filing of its Summons and Complaint [FN1]
on September 28, 2015. Defendant moved to dismiss the Complaint on December 11, 2015.
The following are the pertinent allegations of the Complaint, which the Court must accept as true for the purposes of this motion. All allegations in the Complaint are set forth under the heading "First Cause of Action." Although Plaintiff does not explicitly identify the claim asserted by its sole cause of action, the allegations collectively reflect that Plaintiff is raising a claim for breach of contract.
Plaintiff alleges that it is an authorized distributor of software products and other third party products for C.T. Ventures, Inc. (Complaint at ¶ 9). It further alleges that Plaintiff entered into a "Reseller Agreement" with Defendant in January 2001, by which Defendant became a licensee of Plaintiff to market and resell certain products for which Plaintiff was a licensed distributor (the "January 2001 Contract") (id. at ¶¶ 10-12). A copy of the January 2001 Contract is attached to the Complaint (id. at Ex. B). 
Pursuant to the January 2001 Contract, Plaintiff granted Defendant a non-exclusive license to market and resell certain products, which the January 2001 Contract states are identified in Schedule A thereto (id. at Art. 1.1). However, Schedule A is not included with the copy of the January 2001 Contract that is attached to the Complaint and annexed to Defendant's moving papers. The submitted version of the January 2001 Contract only includes Schedules B and C. Further, the pagination shows that page 6 of 11, which presumably included Schedule A, has been omitted from the copies filed with the Court.
Plaintiff further alleges in the Complaint that both parties performed their obligations under the January 2001 Contract, "except that defendant failed to make certain payments due" (Complaint at ¶ 14). It claims that the parties subsequently entered into another contract "renewing their relationship" (id. at ¶¶ 15-16). Certain portions of a "Reseller Agreement" executed in May 2010 (the "May 2010 Contract") are attached to the Complaint (id. at Ex. C). Pursuant to the May 2010 Contract, Defendant was again granted a non-exclusive license to market and resell certain products for which Plaintiff was a licensed distributor, which products are identified in Schedule A thereto (id.). Schedule A to the May 2010 Contract sets forth the products as follows:
OTS (Object Telephony Server) — Schedule C license
Various other programs and documentation for Computer Telephone Integration — Schedule C license
PS240 Developer's Kit for CAPDE/OTS — Schedule D license
Reseller Support — Schedule E
Third Party Products
Plaintiff in the Complaint cites to Article 7.1(a) of the May 2010 Contract, which reads, in its entirety, as follows:
7.1a Balance Due Reseller [i.e., Defendant] acknowledges current indebtedness to [Plaintiff] in the sum of Four Hundred Nineteen thousand and 00/100 ($419,000.00), the Balance Due.' Annexed hereto is a breakdown of the Balance Due." (Complaint at ¶¶ 18-19 and Ex. C) (emphasis in original).
Exhibit C to the May 2010 Contract consists of a spreadsheet captioned "Account Statement" dated April 28, 2010 and appears to have been issued by Plaintiff and addressed to Defendant. It includes a series of transactions and reflects a "Balance Due" of $419,000.00 (id. at ¶ 20 and Ex. C). Plaintiff alleges that Defendant is liable to Plaintiff for $419,000 less subsequent payments made by Defendant of $42,794.41, for a total of $376,206.59 (id. at ¶¶ 21-23).
As relief, Plaintiff seeks a judgment against Defendant in the amount of $376,206.59, with interest from May 10, 2010 and costs.
DEFENDANT'S CONTENTIONS IN SUPPORT OF ITS MOTION
In support of its motion, Defendant submits an affirmation from its counsel, John W. Fried, Esq. (Flaster/Greenberg P.C.), and a memorandum of law.
The purpose of counsel's affirmation is to attach a copy of the Summons and Complaint (Affirmation of John W. Fried, Esq. dated December 10, 2015 ["Fried Aff."] at ¶¶ 1-3 and Ex. A).
As its legal argument set forth in its memorandum of law, Defendant argues that the Complaint should be dismissed pursuant to CPLR 3211(a)(5) because the sole cause of action for breach of contract is governed by the applicable four year statute of limitations set forth in Article 2-725(1) of New York's Uniform Commercial Code ("UCC").
Defendant contends that the UCC applies to the January 2001 Contract because that agreement is for the market and resale of software products and other third party products. Defendant asserts that the UCC's broad application to all transactions in goods covers this contract, as computer software is considered to be a "good" for UCC purposes. Defendant further argues that the UCC also applies to the January 2001 Contract regardless of whether there was a direct sale of goods or licensure for the sale of goods, because the UCC governs all "transactions" and not only the sale of goods. Defendant also cites to case law that it asserts stands for the proposition that the UCC applies to software licensing contracts of the type at issue in this action.
Defendant contends that even if Plaintiff's cause of action is deemed to be a claim for account stated as opposed to breach of contract, the UCC's statute of limitations nonetheless applies. It argues that the "Balance Due" of $419,000.00 set forth in the May 2010 Contract did not reinstate Defendant's debt to Plaintiff, as the May 2010 Contract did not require Defendant to make payments to Plaintiff for the past due balance. Even if the "Balance Due" reinstated the debt, Defendant asserts that this account stated claim arises out of the same allegation as a breach of contract claim, and is accordingly governed by the UCC's four year limitations period. It further asserts that a party may not circumvent the UCC by entering into a new contract for an account stated. Defendant contends that because both the [*3]January 2001 Contract and the May 2010 Contract and the balance due thereunder arise out of the same allegations, i.e., Defendant's alleged failure to make payments due under the January 2001 Contract, the UCC governs both agreements and the four year statute of limitations warrants the dismissal of Plaintiff's Complaint.
Defendant argues that pursuant to UCC § 2-725(1), an action for breach of contract must be commenced within four years of the breach regardless of whether the aggrieved party has knowledge of the breach, and the common law's six year statute of limitations is inapplicable. It asserts that the underlying transactions all occurred before the May 10, 2010 execution of the May 2010 Contract. Because Plaintiff filed the Complaint more than five years later, i.e., on September 28, 2015, Defendant asserts that the sole cause of action is time barred pursuant to the UCC's four year statute of limitations.
PLAINTIFF'S CONTENTIONS IN OPPOSITION
For its opposition, Plaintiff submits the affidavit of its president, David M. Friedman, and a memorandum of law.
In the Affidavit of David M. Friedman sworn to December 11, 2015 ("Friedman Aff."), Friedman avers that he is the president of Plaintiff and handled the relevant transactions between Plaintiff and Defendant (Friedman Aff. at ¶ 1). He states that the "Balance Due" of $419,000 set forth in the May 2010 Contract was not for Plaintiff's prior sale of goods or software to Defendant, as alleged by Defendant (id. at ¶ 3). Rather, Friedman avers that each of the prior charges comprising the $419,000 was a license fee (id. at ¶ 4). He explains that each charge only involved Defendant selling a software license to one of Defendant's customers, and did not involve Plaintiff selling any software or license to Defendant's customers (id.). Friedman further avers that at the inception of the parties' relationship, Plaintiff furnished its software to Defendant, which Defendant copied onto its system. As such, Defendant was able to subsequently sell the software to Defendant's customers, and it would copy the software from Defendant's system to that of the customer, which process did not involve Plaintiff (id.). Each time Defendant sold the software to a customer, it was contractually required to pay a license fee to Plaintiff, which license fees comprise the $419,000 "Balance Due" noted in the May 2010 Contract (id.). He states that none of the charges included in that $419,000 involved Plaintiff's furnishing of software or a software development kit to Defendant. Rather, these were merely license fees which are "akin to a royalty" (id.).
In its memorandum of law, Plaintiff argues that the four year statute of limitations set forth in UCC § 2-725(1) does not apply to this action. It asserts that Article 7.1(a) of the May 2010 Contract regarding the "Balance Due" of $419,000 embodies a promissory note. Plaintiff further asserts that a promissory note need not be a stand alone document, and may be included in an agreement as a contractual provision, as was the case here. It contends that as a promissory note, relevant claims are subject to a six year statute of limitations pursuant to CPLR 213(2). Plaintiff argues that the promissory note is "divorced from the underlying transaction" and the UCC's four year statute of limitations therefore does not apply. It further asserts that Article 2 of the UCC does not apply, either expressly or by implication, to a promissory note. Plaintiff also contends that where the parties' contract is not primarily for goods sold and delivered, but is related to financing issues, the UCC's four year limitation period is [*4]inapplicable. Because the May 2010 Contract related to the acknowledgment of an indebtedness and was not primarily for goods sold and delivered, Plaintiff argues that the four year statute of limitations for the sale of goods does not govern.
Plaintiff also argues that Defendant's motion should be denied because Defendant has failed to furnish an affidavit from someone with personal knowledge of the facts. Specifically, it asserts that Defendant's description of the parties' agreement in its memorandum of law as a contract to "purchase for resale certain products for which Calltrol was the licensed distributor" is factually inaccurate and unsupported by the relevant contractual provisions. By contrast, Plaintiff notes that it has furnished the Friedman Affidavit, wherein Plaintiff's president avers that the past due acknowledgment of debt was for license fees and not for the sale of goods or software. Plaintiff argues that the issue here is not whether Defendant's sales of software development kits to its customers fall under the UCC; rather, the issue is that Defendant owes Plaintiff payment for license fees, which fees do not constitute the sale of goods and accordingly do not invoke the UCC's four year limitations period. Plaintiff also contends that if Defendant were to furnish sworn testimony on reply attempting to demonstrate that the license was a sale of goods, such belated showing cannot remedy the basic deficiencies in Defendant's prima facie showing.
DEFENDANT'S REPLY
In further support of its motion, Defendant submits a reply memorandum of law. In it, Defendant reiterates its argument that Plaintiff's sole cause of action should be dismissed as time barred pursuant to the UCC's four year statute of limitations, as the underlying transactions occurred prior to May 10, 2010 and the Complaint was filed on September 28, 2015, more than five years after the date of the alleged breach. Defendant again asserts that the May 2010 Agreement, as a contract for the marketing, resale and licensure of software products and other third party products, concerns the sale of goods and is governed by the broad reach of the UCC. As such, Defendant contends that it met its prima facie burden of establishing in its moving papers that the time in which Plaintiff could sue had expired before Plaintiff filed its Complaint. Defendant argues that Plaintiff's assertion in its opposition that the May 2010 Agreement is a contract for accumulated license fees and contains a promissory note is both inaccurate and belied by the contract's terms. Accordingly, Defendant asserts that Plaintiff's opposition failed to rebut Defendant's prima facie showing and failed to establish that Plaintiff's claim was timely filed. 
Defendant also contends that in opposing Defendant's motion, Plaintiff has proffered a "new theory" that the "Balance Due" is a promissory note, which theory is not alleged in the Complaint and is not supported by applicable law, and should not be countenanced by this Court. Specifically, Defendant argues that the "Balance Due" provision in the May 2010 Contract is not a promissory note because (a) Plaintiff in the Complaint did not assert a claim for breach of a promissory note and did not allege any facts supporting such a claim; (b) Defendant never expressed a promise to pay the amount allegedly due as required by UCC § 9-102(a)(65); and (c) Defendant never expressed that the amount due was payable on demand or at a definite time in the future as is required by UCC § 3-104.
[*5]LEGAL ANALYSIS
STANDARD OF REVIEW ON A MOTION TO DISMISS
"On a motion to dismiss a complaint pursuant to CPLR 3211(a)(5) on statute of limitations grounds, the moving defendant must establish, prima facie, that the time in which to commence the action has expired ...The burden then shifts to the plaintiff to raise a question of fact as to whether the statute of limitations is tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable statute of limitations period" (Coleman v Wells Fargo & Co., 125 AD3d 716, 716 [2d Dept 2015]). On such a motion, affidavits may properly be considered, provided that the affidavits come from persons with personal knowledge of the facts (Zhinin v Vicari, 50 AD3d 786, 787 [2d Dept 2009]). 
THE ACTION SHOULD NOT NOW 
BE DISMISSED AS TIME BARRED
The general rule applicable to actions to recover damages for breach of contract is that a six-year statute of limitations begins to run when a contract is breached or when one party fails to perform a contractual obligation (see Beller v William Penn Life Ins. Co. of NY, 8 AD3d 310, 314 [2004]; Squeri v Moriches Assocs., 307 AD2d 260, 261 [2003]; see also CPLR 213[2]). "[A] breach of contract cause of action accrues at the time of the breach" even where "the injured party may be ignorant of the existence of the wrong or the injury" (Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [1993]).
However, UCC § 2-725(1) provides that "[a]n action for breach of any contract for sale [of goods] must be commenced within four years after the cause of action has accrued" (see CPLR 203 [a]). Accordingly, actions involving the sale of goods that are not commenced within the UCC's four year statute of limitations are properly dismissed as time barred pursuant to CPLR 3211(a)(5). See, e.g., QK Healthcare, Inc. v InSource, Inc., 108 AD3d 56, 69-70 (2d Dept 2013); Chernick v RCA, 207 AD2d 373, 373 (2d Dept 1994).
The Court notes that Plaintiff's Complaint does not specify when the alleged breaches of the January 2001 Contract (i.e., the nonpayment) occurred and Defendant does not offer any evidence as to the date of these breaches. Friedman does not directly address this in his affidavit, though he does allude to Exhibit C to the May 2010 Contract, which shows that there were payment shortfalls, but it does not specify the date payments were made, though it does set forth the due date. It seems fair to conclude that all breaches had occurred prior to the May 2, 2010 execution of the May 2010 Contract.
The premise of Defendant's motion is that the very allegations of the Complaint show that the action is untimely in that the action was not brought within four years of May 2, 2010, as required by UCC § 2-725(1). However, even if it may be said that Defendant has shown prima facie that the action is untimely, Plaintiff has raised questions of fact as to whether the statute of limitations has been tolled.
The Court notes that Friedman avers in his affidavit, as does the Complaint, that Defendant made payments to Defendant after May 3, 2010, with the payments totaling $42,794.41. Partial payment of a debt before or after the statute of limitations has [*6]expired may toll the statute or start it running a new, provided that the payment was of a portion of an admitted debt under circumstances amounting to a clear demonstrated intention to pay the balance (see Education Resources Institute, Inc. v Piazza, 17 AD3d 513 [2d Dept 2005]; Bernstein v Kaplan, 67 AD2d 897 [2d Dept 1979]). The statute will be tolled if the creditor demonstrates that it was "payment of a portion of an admitted debt, made and accepted as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder" (Lew Morris Demolition Co. v Board of Educ. of City of NY, 40 NY2d 516, 521 [1976]; Erdheim v Gelfman, 303 AD2d 714 [2d Dept 2003]).
Here, there is no question but that Defendant admitted in the May 2010 Contract that it owed Plaintiff $419,000.00 at the time of the Contract. While Friedman's affidavit is sparse, he does manage to connect the payments after May 3, 2010 to a reduction of the admitted debt by his statement that Defendant is liable for the $419,000 "less subsequent payments" and that "additional payments" of $42,794.41 were made after May 3, 2010. 
The Complaint states that one payment of $2,500 was made on May 12, 2010 and another payment in the same amount was made on June 8, 2010. The Complaint then lists fourteen other payments, of at least $2,000 each, but the dates of such payments are not specified. Nevertheless, given the ambiguity of the record, it cannot be said that, even if it is assumed that the four year statute of limitations applies, that there are no questions of fact as to whether the action was timely commenced.
Putting the issue of part payment aside, there is another ground for holding that Plaintiff has shown the existence of questions of fact as to the timeliness of the action.
As to a written acknowledgment, pursuant to General Obligations Law § 17—101, the statute of limitations will be tolled by a signed written acknowledgment of an existing debt which contains nothing inconsistent with an intention on the part of the debtor to pay it (id.;Lew Morris Demolition Co. v Board of Educ. of City of NY, 40 NY2d 516, 521 [1976]; Erdheim v Gelfman, 303 AD2d 714 [2d Dept 2003]). The critical question is whether the acknowledgment imports an intention to pay (Knoll v Datek Securities Corp., 2 AD3d 594 [2d Dept 2003]; see Jeffrey L. Rosenberg & Assoc., LLC v Lajaunie, 54 AD3d 813 [2d Dept 2008]).
In this case, Defendant acknowledged in writing in the May 2010 Contract that it currently was indebted to Plaintiff in the amount of $419,000, and referred to this amount as the "Balance Due". Furthermore, the written acknowledgment also referred to the accompanying spreadsheet (the "breakdown of the Balance Due"), which in turn showed that there was a larger sub total of claims by Plaintiff ($558,616.50) and that the sum of $419,000 constituted the "Balance Due This Statement" after deduction of $139,616.50 for a negotiated discount. Thus, the writing reflects an admission of a debt to Plaintiff and certainly does not contain anything inconsistent with an intention to pay the debt. The reference to "Balance Due" reflects an intention to pay, since "balance" is referable to the amount in question and "due" reflects that the amount is owing or payable. Moreover, Friedman's affidavit and the allegations of the Complaint reflect that a payment of $2,500 was made on May 12, 2010, which was the day before the [*7]date (May 13, 2010) that Friedman dated his signature on the May 2010 Contract, Defendant having signed the Contract earlier. Thus, there is evidence that Defendant tendered a partial payment, either contemporaneously with or shortly after, its signature of the May 2010 Contract, thus evidencing that Defendant intended to pay the Balance Due. Thus, there are questions of fact as to whether Defendant re-set the statute of limitations by its written acknowledgment of the debt.
But the question remains what statute of limitations was re-set: four years or six.
The Court concludes that it is not possible, on this record, to determine whether the January 2001 Contract is for the sale of goods and thus subject to the UCC.
UCC § 2-102 provides that Article 2 of the UCC "applies to transactions in goods." "Goods" is defined broadly in UCC § 2-105(a) to mean "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." See also Holbrook v Nat'l Fuel Gas Distrib. Corp., 11 AD3d 1040, 1041 (4th Dept 2004); In re Estate of McManus, 83 AD2d 553, 555 (2d Dept 1981).
Fatal to Defendant's motion is the fact that Schedule A to the January 2001 Contract has not been furnished to the Court. Pursuant to the January 2001 Contract, Plaintiff granted Defendant a non-exclusive license to market and resell certain products, which products the agreement states are identified in Schedule A thereto (see Complaint, Ex. B at Art. 1.1). However, the copy of the January 2001 Contract that is annexed to Defendant's motion, and the copy annexed to the Complaint, both omit Schedule A and are missing this critical page. Defendant also failed to furnish an affidavit from someone with personal knowledge of the facts in support of its motion. Its description of the January 2001 Contract in its memorandum of law as involving the sale of goods is insufficient for purposes of meeting Defendant's prima facie burden. Absent documentation or sworn testimony from someone with personal knowledge identifying the specific "products" at issue under the January 2001 Contract, it is impossible for the Court to determine on this motion whether the January 2001 Contract was a transaction in "goods" under UCC § 2-102 and UCC § 2-105(a). As such, Defendant has not met its prima facie burden of establishing that the four year limitation period set forth in UCC § 2-725(1) applies to Plaintiff's breach of contract cause of action, and Defendant therefore cannot make an initial showing that this claim is time barred (see QK Healthcare, 108 AD3d at 69; Paris Suites Hotel, Inc. v Seneca Ins. Co., Inc., 2011 NY Misc. LEXIS 5656 [Sup Ct, Queens County Dec. 2, 2011]).
The Court finds Defendant's authority, Architectronics v Control Sys., Inc., 935 F Supp. 425, 432 (SDNY 1996), to be inapposite. Defendant cites Architectronics for the propositions that computer software is considered to be a "good" under Article 2 of the UCC, and that the UCC applies to the January 2001 Contract regardless of whether there was a direct sale of goods from Plaintiff to Defendant because the UCC governs transactions and not merely sales. However, the Court in Architectronics found that the "predominant feature" of the relevant license agreement was a transfer of intellectual property rights. As such, it held that "the agreement is not subject to Article Two of the UCC" and that plaintiff's breach of contract was timely under the six year statute of [*8]limitations for breach of contract actions not governed by the UCC (see Architectronics, 935 F Supp. at 432). In the Friedman Affidavit, Friedman avers that at the inception of the parties' relationship, Plaintiff furnished its software to Defendant, which Defendant copied onto its system (Friedman Aff. at ¶ 4). Defendant was thereafter permitted to sell the software to Defendant's customers, and it would copy the software from Defendant's system to that of the customer (id.). Whenever Defendant sold the software to a customer, it was required to pay a license fee to Plaintiff (id.). As per Architectronics, there is at least an issue of fact as to whether the "predominant feature" of the agreements between Plaintiff and Defendant in this action involved a transfer of intellectual property rights, i.e., Plaintiff's furnishing of its software to Defendant for copying onto Defendant's system and Plaintiff's granting Defendant permission to sell copies thereof to customers. This authority does not support Defendant's argument that Article 2 of the UCC applies to this transaction, and can instead be read to suggest that the six year limitations period of CPLR 213(2) should govern.
Moreover, even if it is considered that Defendant met its prima facie burden, the Court would find that Plaintiff in its opposition has raised a question of fact as to whether the four year statute of limitations is applicable(see Coleman, 125 AD3d at 716). Friedman avers that he is the president of Plaintiff and handled the relevant transactions between Plaintiff and Defendant (Friedman Aff. at ¶ 1). As such, he has personal knowledge of the facts at issue herein. Friedman avers that the "Balance Due" of $419,000 set forth in the May 2010 Contract was not for Plaintiff's prior sale of goods or software to Defendant, as alleged by Defendant in its moving papers (id. at ¶ 3). Rather, he avers that each of the prior charges comprising the $419,000 was a license fee (id. at ¶ 4). Insomuch as Plaintiff has furnished sworn testimony from someone with personal knowledge of the facts stating that the requested monetary damages are not for Plaintiff's prior sale of goods or software to Defendant, there is an issue of fact as to whether the four year limitation period set forth in UCC § 2-725(1) or the six year statute of limitations of CPLR 213(2) applies to Plaintiff's breach of contract cause of action.
Based on the foregoing, Defendant's motion to dismiss Plaintiff's cause of action for breach of contract shall be denied.
CONCLUSION
The Court has considered the following papers in connection with this motion:
1) Notice of Motion to Dismiss dated December 10, 2015; Affirmation of John W. Fried, Esq. dated December 10, 2015, together with the exhibit annexed thereto;
2) Defendant's Memorandum of Law in Support of its Motion to Dismiss dated December 10, 2015; 
3) Affidavit of David M. Friedman in Opposition, sworn to December 11, 2015;
4) Plaintiff's Memorandum of Law in Opposition dated February 19, 2016; and 
5) Defendant's Reply Memorandum in Support of its Motion to Dismiss dated March 8, 2016.
Based on the foregoing papers and for the reasons stated, it is hereby
ORDERED that the motion by Defendant DialConnection, LLC, also known as Vesper Technologies, L.L.C., pursuant to CPLR 3211(a)(5) for an order dismissing the [*9]Verified Complaint of Plaintiff Calltrol Corporation is hereby denied; and it is further
ORDERED that counsel for the parties shall appear for a Preliminary Conference, one of the purposes of which shall be to establish a schedule for the completion of discovery, to be held on May 27, 2016 at 9:30 a.m., which conference may not be adjourned except upon the prior order of this Court.
The foregoing constitutes the Decision and Order of this Court.
Dated: White Plains, New York
May 10, 2016
E N T E R :
Alan D. Scheinkman
Justice of the Supreme Court



Footnotes

Footnote 1:While the Complaint is labeled "Verified Complaint", no verification appears on the efiled copy or on the copy tendered to the Court. Hence, the Court cannot consider the Complaint to have been verified.